**UNITED STATES of America,**
**Plaintiff,**

v.

**W. Anthony HUFF, Defendant.**

**Civil Action No. 3:00CR–123–H.**

United States District Court,
W.D. Kentucky,
At Louisville.

Feb. 6, 2003.

Stephen Beville Pence, United States Attorney's Office, Joseph M. Whittle, Pedley Zielke Gordinier, David Allen Lambertus, Rob Eggert, Louisville, KY, for Defendant.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

Presently before the Court is Defendant, Anthony Huff's, motion to dismiss.[1] Huff raises two arguments in support of dismissing the indictment against him: (1) he has not been brought to trial within the time limits established by the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.;* and (2) his Sixth Amendment constitutional right to speedy trial has been violated. Particularly the Speedy Trial Act claims raise sensitive questions where the United States has inadvertently caused a delay. These circumstances are such that an absolutely clear resolution is not possible. However, the Court believes that its resolution is fair under the statutory guidelines. For the reasons set forth below, the Court deter-

---

1. Defendants Bryan G. Kerwick and Marion W. Huff adopt and join in Huff's motion.

mines that neither Huff's statutory nor his constitutional speedy trial rights are violated.

## I.

A federal grand jury indicted Huff on November 6, 2000, on thirteen counts of mail fraud (18 U.S.C. § 1341), money laundering (18 U.S.C. § 1957), and criminal forfeiture (18 U.S.C. § 1956(h)). Huff was arraigned on November 14, 2000. On January 26, 2001, the Court declared Huff's case complex. A total of seventy-two days passed between Huff's arraignment and the complex designation. The parties agree that sixty-eight of these days are non-excludable for purposes of the Speedy Trial Act.

After making the complex designation, the Court scheduled the case for an October 22, 2001, trial. Shortly thereafter, the Assistant U.S. Attorney prosecuting the case at that time became pregnant, and her delivery date coincided with the time scheduled for trial. As a result, the United States moved for a continuance which Huff did not oppose. The Court granted the United States's motion and stated in its order that the continuance was granted to serve the ends of justice. Huff's trial was eventually rescheduled for October 15, 2002.

In September 2002, while preparing for trial, the United States realized that it had inadvertently failed to provide Huff with discovery documents concerning an accounting witness it planned to use at trial. Realizing that he did not have enough time to prepare for the United States's use of this witness, Huff filed a motion seeking to exclude the witness. As a result, the Court conducted a number of conferences to learn the nature of the testimony,

whether it was indeed expert testimony and to determine how best to remedy the situation. After much deliberation, the Court determined that the government's witness was an expert and that permitting the United States to use the expert would prejudice Huff unless he was given additional time to review the expert documents and, if necessary, locate a rebuttal expert witness. The Court orally advised the parties that if the trial was going to take place as scheduled the expert would be excluded. Huff then announced that he was ready for trial.

In response, the United States moved for a continuance over Huff's objection. The Court granted the United States's motion on October 15, 2002, and Huff's trial was rescheduled for February 24, 2003.[2] Huff then filed the present motion to dismiss for failure to provide a speedy trial. Huff argues that the delay in bringing this matter to trial has resulted in a violation of both the Speedy Trial Act and the Sixth Amendment.

## II.

The Speedy Trial Act requires that a defendant's trial be commenced within seventy days of the filing date of his indictment or arraignment, whichever is later. *See* 18 U.S.C. § 3161(c)(1); *United States v. Cianciola*, 920 F.2d 1295, 1298 (6th Cir. 1990). The Act lists certain periods of delay that are to be excluded from the Act's time computation. *See* 18 U.S.C. § 3161(h). The list of delays set out in the Act has been held exhaustive. *See United States v. Crane*, 776 F.2d 600, 603–04 (6th Cir.1985) (*citing United States v. Carrasquillo*, 667 F.2d 382, 388 (3d Cir.1981)).

---

2. The parties agree that the period from January 26, 2001, the date the Court declared the case complex, until October 15, 2002, the date the Court granted the United States's second motion for a continuance, is excludable from the Speedy Trial Act calculation.

In this case, the parties disagree over whether the time from October 15, 2002, the date the Court granted the United States's motion for a continuance, until February 24, 2003, the date set for trial, should be excluded from the Speedy Trial Act calculation as an "ends of justice" continuance. *See* 18 U.S.C. § 3161(h)(8). Huff's argument that it should not is two-fold: (1) that the Court did not make sufficient findings at the time it granted the continuance to support an "ends of justice" continuance; and (2) even if the Court did make such finding, it was prohibited from granting an "ends of justice" continuance because the continuance was necessitated by the United States's lack of preparation. The Court will consider each argument in turn.

### A.

Section 3161(h)(8)(A) gives courts the discretion to exclude time from the running of the seventy-day period based upon a finding that the "ends of justice" are served by such delay. Whereas all other exceptions to the Speedy Trial Act are specific, section 3161(h)(8)(A) offers courts wide latitude by allowing them to respond to the needs of individual cases. *United States v. White,* 985 F.2d 271, 275 (6th Cir.1993).

Along with this latitude, however, comes certain burdens. Section 3161(h)(8)(A) further provides: "No such . . . continuance granted by the court in accordance with this paragraph shall be excludable . . . unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the . . . continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). In order to properly grant an "ends of justice" continuance, therefore, the court must place its reasons for granting the delay on the record. "While the presence of these findings in the record is essential, the judge need not have entered the findings at the time the continuance was granted." *See Crane,* 776 F.2d at 606. It is permissible for a court to enter its findings in an order denying a defendant's motion to dismiss so long as the court actually based the continuance on those findings. *See United States v. Richmond,* 735 F.2d 208, 215 (6th Cir.1984). In other words, "[a] district court judge cannot wipe out violations of the Speedy Trial Act after they have occurred by making the findings that would have justified granting an excludable-delay continuance before the continuance occurred." *Crane,* 776 F.2d at 606 (*quoting United States v. Janik,* 723 F.2d 537, 544–45 (7th Cir.1983)).

The Court did not memorialize its reasons for granting the United States's motion for a continuance in its October 15, 2002, Order. The Order itself does not indicate why the continuance was granted.[3] This fact standing alone does not entitle Huff to a dismissal of the indictment.

---

**3.** In part, the Order states: "The motion was considered without reference to Speedy Trial which can be raised later by any party." Huff contends that this is prima facie evidence that the Court did not make the appropriate findings necessary to justify an ends of justice continuance at the time it granted the United States's motion. This is not how the Court intended its language to be interpreted. The Court intended the Order to place on the record the Court's understanding that Huff had not waived his right to assert any speedy trial arguments he might have, whether they be statutory or constitutional, and that he could move for dismissal based on those arguments at a later date. The Court's language was not meant to imply that it had granted the continuance without considering the need for the continuance in conjunction with Huff's rights to have the trial conducted as scheduled.

What is determinative is whether the Court actually made the findings necessary to support an "ends of justice" continuance at the time the continuance was granted, not whether it entered those findings in the record at the time. In this case, the Court struggled with how to appropriately resolve this issue from the time Huff first moved to exclude the United States's expert witness until the time the Court granted the United States's motion for a continuance. The Court conducted three conferences with the parties, two of which were on the record, and spent considerable time pondering and researching the related issues. The Court's sole motivation in this matter was to reach a just decision for both sides under the existing circumstances. From its review of the record, and its own recollection of the events, the Court is confident that it made the necessary findings at the time appropriate time. From a procedural standpoint, therefore, all that remains for the Court to do is place those findings on the record.[4] The Court will do so now. In order to put its findings in the proper context, the Court will briefly review the procedural events that led to its decision to grant the continuance. On September 25, 2002, Huff filed a motion seeking to exclude the testimony of an accounting witness it recently learned the United States planned to call in support of its case at Huff's trial. The United States responded that its accountant was a summary witness not an expert, and therefore, that the harsh remedy of exclusion was not required. Based on the nature of the witness's anticipated testimony and the manner in which he arrived at his conclusions, the Court found that the witness was an expert, not merely a summary witness. As such, pursuant to Fed. R. Crim. Pro.

16, the United States should have provided defense counsel with certain information relating to this accounting expert witness but failed to timely do so in contravention of the Court's prior discovery order. The Court concluded that this omission was not purposeful, but rather due to an unfortunate lapse by various counsel for the United States during a time when trial counsel changed. Nonetheless, because the expert information was produced at such a late date, the Court concluded that to allow the United States to use the information at the trial without providing defense counsel additional time would be highly prejudicial. Thereafter, Defense counsel announced that they were ready for trial. The United States then moved for a continuance over Huff's objection.

In deciding whether to grant the continuance, the Court believed that even without the use of its accounting expert, the United States would likely be able to introduce hundreds of pages of Huff's banking records, and attempt to trace how Huff used certain loan proceeds. However, the Court concluded that a presentation of such information without the aid of at least some expert testimony could easily confuse any jury and might possibly lead to a decision based on something less than the actual evidence placed before the jury. In the Court's opinion such a result could be detrimental to either side. Thus, even though Huff's case had been pending for some time, the Court ultimately found that justice would best be served by granting a continuance so that both sides could present their best case to the jury.

By placing these findings in the record, the Court is certain that it has complied

---

4. Admittedly, it would be better to have these reasons already on the record as the statute suggests. However, no one requested the Court to place its reasons on the record, even though both sides anticipated a Speedy Trial motion.

with the procedural requirements of the Speedy Trial Act.

### B.

What is far less certain is whether these findings are actually sufficient to justify an "ends of justice" continuance under § 3161(h)(8). Several factors should guide a district court when determining whether to grant an "ends of justice" continuance. "The factors, among others, which the district court must consider are whether the failure to grant the continuance would likely make a continuation of the proceedings impossible or result in a miscarriage of justice; whether the case is so complex that it is unreasonable to expect adequate preparation for pre-trial proceedings within the time limits of the Act; whether failure to grant the continuance would deny the defendant time to obtain counsel, or would deny the United States or the defendant continuity of counsel, or would deny counsel reasonable time necessary for effective preparation." *Cianciola*, 920 F.2d at 1299 (*citing* 18 U.S.C. § 3161(h)(8)(B)(i)-(iv)).

The Court took these factors into account when deciding whether to grant the United States's continuance. Specifically, the Court believed that without expert testimony the jury might have become hopelessly confused by the complex financial information introduced by the United States. Such confusion had the very real possibility of causing a "misarrange of justice." As such, the Court found that on the balance the need for each party to present its best case outweighed Huff's right to have the trial proceed as scheduled particularly where the delay could be kept at minimum. This appears sufficient to justify an "ends of justice" continuance. *See* 18 U.S.C. § 3161(h)(8)(B)(i)-(iv).

However, § 3161(h)(8)(c) precludes a district court from relying on the United States's lack of preparation as a reason for granting an excludable continuance. *See* 18 U.S.C. § 361(h)(8)(B); *Cianciola*, 920 F.2d at 1298. Huff contends this section precludes the Court from granting an "ends of justice" continuance in this case because the subject continuance resulted from the United States's failure to provide timely discovery which can only be classified as a lack of preparedness on the United States's part. Huff's argument has a good deal of appeal. The Speedy Trial Act does not define "lack of diligent preparation." Furthermore, neither the parties nor the Court has been able to locate any case that defines or explains the precise meaning of this phrase. The best guidance comes from the Sixth Circuit's opinion in *Cianciola*. There the Sixth Circuit found that a continuance granted by the district court for the purpose of allowing the defense to fully prepare for trial after the United States failed to timely disclose certain discovery materials was properly excluded from the Speedy Trial Act computation because there was no evidence that the United States "committed chronic discovery abuses or acted in bad faith." *Id.* at 1300. According to the *Cianciola* court, the United States's inadvertent failure to comply with its discovery obligations was not tantamount to a "lack of diligent preparation" for the purposes of the Speedy Trial Act. *See id.*

■ This is a close case that admittedly could go either way. Certainly, it can be argued that the United States's behavior in this case demonstrates a lack of preparedness, and therefore, that the delay caused by the continuance cannot be excluded under the Speedy Trial Act. In this case, however, the Court has determined, based in part on *Cianciola*, that it would be unfair to classify the United States's omission as a lack of preparedness especially where the Court found that the Unit-

ed States acted negligently, not in bad faith or as part of a pattern of chronic discovery abuse. Also, the failure to provide the report resulted in part from a necessary change in trial counsel. *See id.* As such, § 3161(h)(8)(B) does not bar what the Court has already determined is an otherwise excludable "ends of justice" continuance.

## III.

■ Huff also argues that his Sixth Amendment right to a speedy trial has been violated. The Sixth Amendment guarantee of a speedy trial turns upon the four-part test promulgated in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The test requires courts to balance: 1) the length of delay; 2) the reason for the delay; 3) whether and how the defendant asserted the speedy trial right; and 4) the amount of prejudice suffered by the defendant. *See id.* at 533, 92 S.Ct. 2182. No single factor is determinative; rather the court should conduct a balancing test. *See id.*

■ In this case, there has been a twenty-seven month delay between Huff's indictment and the date now set for trial. On its face this seems quite excessive. However, from January 26, 2001 to October 15, 2002, Huff participated in and agreed to the delay, and he cannot now protest this period. *See White,* 985 F.2d at 275. The actual delay then is from October 15, 2002, until February 24, 2003. A four-and-one-half month delay is not unreasonable. *See id.* (sixth-and-one-half month delay does not rise to the level of a constitutional violation); *United States v. Holyfield,* 802 F.2d 846 (6th Cir.1986) (five-month lag not excessive).

The second factor, the reason for the delay, requires the court to examine the United States's motive for delay. *See White,* 985 F.2d at 275. Delays intended to secure a tactical advantage weigh heavily against the United States. *See id.* In this case the delay was caused by the United States's failure to timely produce documents related to its expert. While the United States may have acted negligently under the circumstances, no facts suggest that the United States was attempting to gain a tactical advantage over Huff. It appears the delay resulted from pure oversight, nothing more.

The third factor, whether and to what degree defendant asserted his speedy trial rights, favors Huff. *See id.* at 276. Huff asserted his constitutional right to a speedy trial orally and in writing both before and at the time the United States moved for a continuance. Huff filed the present motion well before trial was scheduled to begin.

The fourth factor, prejudice, requires the Court to consider the degree of prejudice the delay caused the defendant to suffer. The Sixth Circuit requires a showing of "substantial prejudice." *See United States v. DeClue,* 899 F.2d 1465, 1470 (6th Cir.1990). In *Barker* the Supreme Court identified three different types of prejudice a defendant may suffer from a pretrial delay: (1) oppressive pretrial incarceration; (2) anxiety and concern; and (3) the possibility that the defense will be impaired. *Barker,* 407 U.S. at 532, 92 S.Ct. 2182. Of these, the most important factor is possible impairment of the defense. *See White,* 985 F.2d at 276. Huff has been free on bond and has not been incarcerated during the pendency of this case. Thus, Huff has not suffered any prejudice in this respect. Huff has also failed to show how the most recent delay has caused him to suffer any additional anxiety or concern. While this action has no doubt caused Huff to suffer anxiety and incur substantial attorneys' fees, it must not be forgotten that Huff acquiesced to

the initial two-year delay. Therefore, the Court cannot consider the effect this period had on Huff. *See id.* at 275. The Court can only look at how the most recent delay has impacted Huff. *See id.* Huff has failed to show how this delay has caused him to suffer any anxiety or harm apart from the normal anxiety and expense that accompany a criminal trial of this nature and complexity. This is insufficient for the purpose of demonstrating substantial prejudice. *See United States v. LaBorde,* 496 F.2d 965, 968 (6th Cir.1974) ("While at least some such adverse effects would appear inherent in every trial delay, where . . . there has been no evidence of any inconvenience, public embarrassment or manifestation of prejudice the overall adverse effect [of the delay] can be assumed to be insubstantial.") Finally, and most important, the Court must determine whether the delay has impaired Huff's ability to mount a defense. Huff alleges that the recollection of witnesses will be affected by the delay. However, the Sixth Circuit has held that conclusory statements concerning memory impairment are insufficient to show actual, substantial prejudice:

> While appellants assert that defense witnesses' memory may have been impaired, nowhere do they cite specific examples of impaired memory nor does an examination of the record reveal any. Further, there is no claim that any of the appellants' witnesses died or otherwise became unavailable owing to the interval from indictment to trial. . . . Memories are just as likely to fade for prosecution witnesses, and it is the prosecution which carries the burden of proof.

*United States v. Mulligan,* 520 F.2d 1327, 1333 (6th Cir.1975). Overall, the fourth factor does not weigh in favor of Huff.

After balancing all the factors, the Court concludes that the most recent delay has not caused Huff to suffer the type of "substantial prejudice" required by the Sixth Circuit to establish a Sixth Amendment speedy trial violation.

### ORDER

On Defendant's motion to dismiss, the Court having reviewed the memoranda and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion to dismiss is DENIED.

This is not a final and appealable order.